ERIE CITY IRON WORKS *vs.* CUSHNOC PAPER COMPANY.

Kennebec.    Opinion March 25, 1915.

*Contract.    Delay in Delivery.    Extra Cost of Fire Brick Used in Setting. ·  Material
Fact.    Recoupment.    Representation.    Specifications.    Warranty.*

In an action of assumpsit for the balance due for the construction and delivery
of a five hundred horse power boiler, a written contract having been entered
into therefor and the defendant having set up various grounds for recoupment,
it is

*Held:*

1.   That the statement in the contract of the quantity of brick and tile required
for standard setting of the boiler was an estimate merely and not a representa-
tion of an existing and material fact.   It formed no material part of the contract
itself, and the defendant cannot recoup for any excess of cost.

2.   That the delay of three weeks in delivering the boiler did not work a breach,
as the contract provided that the time of delivery should be contingent upon
late mill deliveries or other hindrances beyond the plaintiff's control, and the
evidence shows that late mill deliveries were the cause of the delay.

3.   That, therefore, any excess of cost in constructing a brick instead of a cement
boiler house, the change being caused as alleged, by the delay in delivery,
cannot be allowed in recoupment, especially in view of the fact that all corres-
pondence or conversations in regard to building a cement house were independ-
ent of the contract and merely personal matters between the agent of the plain-
tiff and the general manager of the defendant.

On report.    Judgment for plaintiff for $1890, with interest from the
date of the writ.

This is an action of assumpsit upon an account annexed to recover
the sum of $1890, being the balance due for one five hundred horse
power  vertical water  tube boiler  and  fixtures according  to written
contract between the parties dated August 12, 1912.    Tried in the
Superior Court for Kennebec County, September term, 1914.    The
plea was the general issue, with brief statement of special matters of
defense to be used under the general issue, in which defendant claims
to recoup in damages.    At the conclusion of the evidence, the case

was reported to the Law Court for determination: The Law Court to determine the rights of the parties, assess such damages as a jury would be warranted to assess under the testimony in the case: Testimony offered and excluded to be a part of the report, excepting testimony relating to the question of fuel.

The case is stated in the opinion.

*Williamson, Burleigh & McLean,* for plaintiff.

*M. S. Holway,* for defendant.

SITTING: SPEAR, CORNISH, KING, BIRD, HANSON, JJ.

CORNISH, J. The plaintiff, a corporation doing business at Erie, Pennsylvania, on August 24, 1912, through its New England Agent, C. H. Bradley, Jr., of Boston, Massachusetts, entered into a written contract with the defendant through its President and General Manager, Mr. Lyman, for the construction and delivery of one five hundred horse power vertical water tube boiler for the sum of thirty-one hundred dollars f. o. b. cars at Erie, freight allowed to Augusta, Maine, payment to be made, one-half on arrival at Augusta and the balance ninety days thereafter. The contract contains detailed specifications of the work. Delivery was to be made "three weeks from August 26," which was September 16, 1912. It was not in fact delivered until October 11, 1912. On its arrival in Augusta the boiler was accepted and set up by the defendant, and so far as the evidence shows was entirely satisfactory. On November 7, 1912, payment was made of one-half the purchase price. No further payments being made the plaintiff brought this action of assumpsit for the balance due and the defendant claims to recoup for damages sustained, in three particulars:

First, for extra cost of fire brick used in setting the boiler; second, for extra cost of tile in same; and third, for cost of brick boiler house in excess of estimated cost of cement house, the change being caused, as alleged, by the delay in delivery.

The claims for extra cost of fire brick and tile in setting the boiler may be considered together. The contract contains this paragraph:

"Brick required for standard setting, 35000 red brick, 4400 No. 1 fire brick, 5000 No. 2 fire brick, 1300 wedge brick, 360 tile 12 x 12 x 2, 18 tile 12 x 24 x 2½." The quantity of fire brick actually used in the construction was 14,290 and of tile 460. For the cost of this excess

the defendant claims to recover on the ground that the plaintiff had represented or warranted the amount required, and was legally liable for the falsity of the representation.

We are unable to so construe the contract. This statement as to quantity of brick was not a representation of a material existing fact but merely an estimate on the plaintiff's part of what it would cost under standard setting to set the boiler which it had agreed to furnish. It formed no material part of the contract itself, but was one of the collateral matters connected with it, on which it gave its judgment. It is difficult to believe that the defendant relied on this estimate as the representation of a material fact, in making his contract, and was led to enter into the agreement because of this representation, a necessary element on which to base a claim for false representation. *Patten* v. *Field*, 108 Maine, 299; *Hotchkiss* v. *Coal & Iron Co.*, 108 Maine, 34. The record is barren of any evidence to support such a contention.

It further appears that the standard setting, suggested in the contract, requiring a four and one-half inch fire brick lining, was not followed, but a nine inch lining was substituted, which required, as the defendant admits, twice as much material. It is true that this change was suggested by the plaintiff's agent, Mr. Bradley, but it was made on November 21, long after the contract itself was made and the boiler furnished, and was simply one of many friendly suggestions made in the course of the erection, and was entirely independent of the contract itself. This claim cannot prevail.

The defendant's remaining contention is that by reason of the delay in delivery and the consequent lateness of the season it was forced to build a brick instead of a cement building, and thereby to incur an additional expense of six hundred dollars. This contention fails for two reasons. In the first place the evidence negatives a breach of the contract because of delayed delivery. The time specified was three weeks from August 26, but this must be construed in connection with another clause in the contract, which provides as follows: "Time of delivery to date from the receipt of full details of order, contingent upon delay caused by fire, strike, accident, late mill deliveries or other hindrance beyond our control." The plaintiff's evidence shows that the delay was caused by the Otis Steel Company's delayed delivery of the necessary boiler plate to the plaintiff, for which the plaintiff was in no way responsible. The

treasurer of the plaintiff company testified that the delays were all absolutely beyond the control of his company and this evidence stands uncontradicted.

In the second place, the contract itself is silent as to the kind of boiler house to be erected. That matter was not in the contemplation of the parties. The contract was for a boiler, not a boiler house. Mr. Lyman admits that he originally contemplated building a brick building, but that Mr. Bradley suggested a cement building as cheaper and sent plans therefor, all of which was independent of the contract, and was simply a personal matter between Mr. Bradley and himself in which Mr. Bradley was offering his friendly advice. This evidence annihilates the claim.

As the defendant's grounds for recoupment cannot be sustained the entry must be,

*Judgment for plaintiff for $1890 with interest from date of the writ.*